after the act of 1854. Neither he nor French, under whom he claims, had any interest in the land when that act was passed. He insists that the land was solely that of the government, and how he can question the right of the sovereign to dispose of its land as it may see fit, and its action in recognizing equities in the grantees of Poncin, we confess we have been unable to discover. His counsel's argument rests upon the assumption that Poncin became the absolute owner in his own right by the patent in 1855; that no precedent equities existed, or could by congress be recognized to exist, and that the title under the act inured only to the grantees of Poncin, who held by deeds of warranty. Such a construction would defeat the manifest intention of the act.

By the construction for which the plaintiff contends the act was passed for, or inured to, the benefit of French, although he had on the 19th day of April, 1850, made a bond for a deed to Elfelt, which was recorded, and although he had on March 19th, 1851, for a valuable consideration, conveyed by a deed which was also on record, all his interest in said lands to Elfelt. It is utterly inconceivable that congress intended the act for the benefit of French. It was intended for the benefit of the owners under Poncin, and the owner at the time of its passage was Van Etten, the grantee of Elfelt. The bill must be dismissed. Bill dismissed.

[Subsequently this case was taken on appeal to the supreme court, where the decree of the circuit court was affirmed. 19 Wall. (86 U. S.) 20.]

---

## Case No. 8,686.

McCARTY v. The SENATOR.

[See 21 Fed. 191.]

---

McCARTY (UNITED STATES v.). See Cases Nos. 15,657 and 15,658.

---

## Case No. 8,687.

McCASKEY v. The COAL BLUFF NO. 2.

[26 Pittsb. Leg. J. 185.]

District Court, W. D. Pennsylvania. 1879.

MARITIME LIENS—BUILDERS—WORK AND MATERIAL—CONTRACT ON LAND.

McCaskey and Kerr filed a claim against "Coal Bluff No. 2," in the U. S. district court, for building a new hull and furnishing materials for the same. The commissioner refused to allow the claim to participate in the fund for distribution arising from the sale of said boat, on the ground that said claim could not be enforced by the admiralty courts of the United States. Held, that the admiralty jurisdiction of the United States courts does not extend to cases, and cannot be enforced, where a lien is claimed by the builders of a vessel for work done and materials found in its construction.

An important and interesting question arose before Thos. M. McFarland, Esq., commissioner, in the case of "Coal Bluff No. 2," as to the jurisdiction of the admiralty courts of the United States. Exceptions were taken to the commissioner's ruling, and ably argued by the proctors for the libellants.

The exceptions were overruled. Following we give in full the commissioner's opinion on the question of jurisdiction: Having decided that "Coal Bluff No. 2," is a new boat, under the law, in this connection it will be more convenient and appropriate to consider next the claim of McCaskey & Kerr for building said new hull and furnishing materials for the same. There can be no doubt as to McCaskey & Kerr's lien before said boat passed within the dominion of the maritime law, but, after she entered her appropriate element, what is the position of said claimants in the federal court? It is well known that district courts recognize admiralty jurisdiction in rem against a vessel where certain liens are created by the local law of the state. The proctors in behalf of McCaskey & Kerr contend that this claim is entitled to participate in this distribution on the ground that the statutes of our state, relative to attachment of vessels, provide "for all debts contracted by the owner or owners, agent, consignee. master, clerk or clerks of such ship, steam or other boats, or vessels of whatever kind, character, or description, for and on account of labor done, or materials furnished, by boat builders," &c. [Laws 1858, p. 363], and that, as the supreme court has decided liens granted by the laws of a state in favor of material men for supplies furnished to a vessel in her home port can be, and are enforced, by proceedings in rem in the district courts of the United States. The Lottawanna, 21 Wall. [88 U. S. 558]. Therefore, said claim should share in this distribution. The proctors for said libellants do not contend, it will be observed, that a contract to build a ship is a maritime contract, but vest their case on said statutory provisions in connection with the decision in the case of The Lottawanna [supra] and other similar decisions to which it is unnecessary to refer, as the case cited in 21 Wall. answers the purpose of stating their position. On the other hand, it is contended that a contract to build a vessel is a contract to be performed on land, and falling within the common law belongs to state jurisdiction, and a state has a right to give a lien against a vessel for work and materials entering into her construction, but that it cannot be enforced in the federal courts. There is no doubt but that proceedings are allowed in rem against domestic ships for repairs and supplies furnished in the home port, but does it follow that a lien for building a vessel can be enforced the same as the lien for repairs and supplies? While the proctors for the libellants may claim the question of maritime contract is not involved in the question I think it necessarily is. Suppose we were to admit that said statutory